## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVON WILKINS | * | |
| Petitioner | * | |
| v. | * | Civil Action No. JKB-14-484 |
| WARDEN, *et al*. | * | |
| Respondents | * | |

\*\*\*

## MEMORANDUM

An answer seeking dismissal of this petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 is pending. ECF 9. Petitioner has filed a reply. ECF 10. No hearing is required. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2014); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons set forth below, the petition must be denied.

### Background

Petitioner Davon Wilkins ("Wilkins") was charged with murder and related gun offenses on January 28, 2011, in the Circuit Court for Baltimore City. Wilkins was accused of the shooting death of Renato Broom, who died from a single gunshot wound on July 1, 2010. Wilkins was charged with first-degree murder, second-degree murder, manslaughter, use of a handgun in the commission of a crime of violence, and wearing, carrying, or transporting a handgun.

Wilkins was tried before a jury on April 20 and 23, 2012. The only issue for trial was whether Wilkins shot Broom intentionally. The evidence presented by the State consisted of the testimony and identification of Wilkins by two witnesses, Allen Simpson and William Goode.

ECF 9 at Ex. 2, pp. 48 – 103 and 133 – 162.  Simpson identified Wilkins as the shooter in a photographic array and provided a tape-recorded statement to police.  He testified that Wilkins and Broom were arguing about money related to a dice game and that Wilkins pointed a gun at Broom to scare him, but then shot him.  Simpson maintained at trial that the shooting was an accident.  In his recorded statement to the police, Simpson claimed he had witnessed the entire incident.  He described Wilkins and Broom as best friends and related they were playing dice. When they began to argue about money, Wilkins left the game and came back with a gun, waiving it around and trying to scare Broom.  Simpson recalled that Wilkins said, "Yo, give me my mother fucking money back" and "your life is in my hands."  At that point Wilkins shot Broom.  Simpson related his opinion in his recorded statement that the shooting was an accident. When identifying Wilkins in the photo array, Simpson wrote on the back that "on summer day on Lennox and Park Ave, [Broom] and others were shooting dice when things got out of hand and [Broom's] best friend (Wilkins) went to get a gun to get his money back and try to scare him.  That's when he got shot." ECF 9 at Ex. 2, pp. 48 – 103.

William Goode's testimony also varied from the recorded statement he provided to police.  At trial he testified that on July 1, 2010, the day of the shooting, he was at his sister's apartment on the first floor of a building located on North Avenue.  While Goode was in the living room listening to music or watching television he heard loud noises outside and looked out the window to see a lot of people walking away.  He stated he heard someone screaming "it was an accident" but claimed he did not see anyone with a gun or running away.  Goode waffled about whether he saw Wilkins uttering the words "it was an accident."  At first he maintained he did not see the person's face who said it; then he claimed several people said it.  When asked on direct examination if Wilkins, the person who Goode had identified in a photo array, was one of

the people who had said "it was an accident," Goode claimed that Wilkins had not been among those who made that statement.    After reminding Goode of his prior statement identifying Wilkins, he admitted that Wilkins was one of the persons making that statement.  Goode further maintained that Wilkins looked emotional and concerned and described Wilkins and Broom as the best of friends.

Goode also testified he did not hear a gunshot, but had told police on July 15, 2010, that he had heard a shot prior to getting up to look through the window.  Because Goode testified inconsistently with his recorded statement, the State was permitted to play Goode's taped statement for the jury.  In that statement Goode explained he had identified Wilkins, "because that's the one I seen (sic) standing, made the statement saying it was accident."   On cross-examination, Goode's testimony was impeached with his pre-trial suppression hearing testimony that he had not seen who said it was an accident.  Goode further admitted he was suffering from personal problems about which he did not provide details.  ECF 9 at Ex. 2, 133 – 162.

No evidence was presented by the defense and the jury returned a verdict acquitting Wilkins of the murder charges, but finding him guilty of involuntary manslaughter and the handgun offences.  At sentencing, the State presented two witnesses who were family members of Broom, who was 16 years old at the time of his death.  Additionally, the State noted that Wilkins was 19 at the time of the offense, but already had an adult criminal history.  At the time of the offense, Wilkins was on probation for second-degree assault on a 16-year-old special needs child.  A warrant for probation violation had been issued for Wilkins because he did not obey an order to stay away from the victim and did not attend court-ordered anger management classes.   While in jail awaiting trial on the murder charges in this case, Wilkins incurred infractions including possession of escape paraphernalia, contraband (cell phones), and assault

on correctional staff.  The State asked the court to sentence Wilkins to the maximum of 10 years for the manslaughter conviction and 20 years[1] consecutive for the use of a handgun in the commission of a crime of violence and described the shooting death of Broom as "heartless and cold."  ECF 9 at Ex. 4, pp. 7 – 10.

In mitigation, defense counsel had a social worker who "worked with Wilkins" testify that Wilkins's mother has an intellectual disability that, in the social worker's opinion, made it difficult for her to obtain services for Wilkins through the public school system.  She further opined that Wilkins also suffers from a similar disability that largely affects his verbal communication skills.  Wilkins had consistently been tested in the bottom five percent in reading and comprehension and did not receive the proper services in school to address those deficits.  She asked the court not to hold any perceived dishonesty in Wilkins's pre-sentence investigation interviews against him as his difficulties in relating information was to blame for inconsistencies.  ECF 9 at Ex. 4, pp. 11 – 14.

In sentencing Wilkins, Judge Young made the following statement, relevant to the issue pending before this court:

> I always, when I sentence people, keep three concepts in mind, the first concept is justice. Justice is if you take a life you give, you forfeit yours. We don't have that.
>
> Justice is that when you mete out pain, you experience pain. We don't have that, some countries do. I've learned not to loose [sic] sleep and debate the wisdom of a jury. But I'd be less than honest if I didn't say that I have read over my bench notes, and read over the PSI, and I still am not sure how this jury arrived at manslaughter other than they took Mr. Wilkins' age into consideration.
>
> . . . [T]here was a crap game, there was an argument. Apparently he lost his money and he left the crap game and he traveled to wherever he had to get a

---

[1]  The recommended guidelines for sentencing were six to ten years for manslaughter and ten to fifteen years for use of a handgun.  ECF 9 at Ex. 7, p. 5.

gun. And he came back and shot the victim in this case. How that's manslaughter I don't know. So in my opinion, the jury gave him a break.

Then there's mercy. And mercy is when you want to hold out hope that somebody has seen the light or has recognized the error or the gravity of what they've done. And I'm a great believer in mercy when people, and even at the time of sentencing, express remorse. There has been, not throughout the trial, there has been not at the time of the interview, any expression of remorse whatsoever. Not even so much as saying I'm sorry for what happened to Rinatto [sic]. That's cold.

And then there's grace. And grace says I want to offer this person a break that they don't deserve because they will never again pass this way. I don't feel that way about Davon Wilkins. In fact, I am absolutely, positively convinced, even after all, after the PSI, that Mr. Wilkins has been so scarred by life in his upbringing that if given a chance, and given the opportunity, he would pass this way again. And I, after 28 years, am absolutely convinced there is a threshold, there's a door through which almost no human being will go. It takes a lot to cross the threshold of sensitivity, of consideration, of decency, or morality, of civility, and kill another person.

But I'm convinced that having watched and sensed and tasted blood, without intensive, extensive psychiatric and psychological treatment, which I know for a fact will not be forthcoming in the Division of Corrections, Davon Wilkins will continue to pose a threat not just to strangers, but to those like Rinatto [sic] Broom, who he professes to be close to.

And so, as I read the PSI, there's no remorse. And there's no demonstration of a willingness even though he, as he's in an institution, to comply with the rules and to comport himself in a way that will allow him to serve his time and get any benefit from incarceration. He has three charges pending, including assault and battery on correctional staff. Including possession of instruments of escape, possession of contraband, possession of cell phones. That to me, folks, simply says the rules don't apply to me. And when the rules, you feel the rules don't apply, you have no hesitancy whatsoever to transverse the bounds of the law and of civilization.

ECF 9 at Ex. 4, pp. 16 – 18. Wilkins was then sentenced to serve ten years for manslaughter and twenty years consecutive on the use of a handgun in the commission of a crime of violence with five years to be served without possibility of parole. *Id*. at pp. 18 - 19.

On direct appeal to the Maryland Court of Special Appeals, Wilkins raised one issue stated as, "Did the trial judge abuse his discretion during sentencing when he impermissibly

considered acquitted charges and relied on an independent finding of premeditation that the jury

rejected and the evidence failed to support?"   ECF 9 at Ex. 5, p. 2.   In its opinion denying

appellate relief, the Court of Special Appeals rejected Wilkins's claim on three grounds.   First,

the claim was not properly preserved for appellate review due to counsel's failure to object to the

judge's commentary.   Second, the nature of the claim did not warrant "plain error review" under

Maryland law as trial judges in Maryland have "virtually boundless discretion" in their

statements regarding sentencing.   Finally, the appellate court noted that the statements made by

Judge Young were permissible under the holding in *Henry v. State*, 273 Md. 131 (1974), which

provided:

> Because an acquittal does not have the effect of conclusively establishing the
> untruth of all of the evidence introduced against the defendant . . . I am
> persuaded that for the same purposes a sentencing judge may consider reliable
> evidence concerning the details and circumstances surrounding a criminal
> charge of which a person has been acquitted.

*Henry*, 273 Md. at 148 (quoting with approval dissent of Davidson, J., in *Henry v. State*, 315

A.2d 797, 808 (Md. Ct. Spec. App. 1974)).   Notably in Wilkins's case, the appellate court

recalled the evidence that Wilkins did not dispute:  that Broom was killed in an argument over a

dice game; that Wilkins retrieved a gun, waived it menacingly in the air, and made threatening

statements; and that just prior to shooting Broom, Wilkins ordered him to "give me my mother

fucking money."  ECF 9 at Ex. 7.

Wilkins filed a petition for writ of certiorari with the Maryland Court of Appeals, which

was denied. ECF 9 at Ex. 8.  The instant petition raises the same claim asserted in Wilkins's

direct appeal, and respondents do not argue the claim is unexhausted.  ECF 9 at Memorandum.

**Threshold Considerations**

<u>Exhaustion</u>

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he must have exhausted each claim presented to the federal court by pursuing remedies available in state court.  This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim.  28 U.S.C. § 2254(b) and (c).  In Maryland, this may be accomplished by proceeding with certain claims on direct appeal (and thereafter seeking *certiorari* to the Court of Appeals), and with other claims by way of a post-conviction petition, followed by seeking leave to appeal in the Court of Special Appeals.

Petitioner no longer has any state direct appeal or collateral review remedies available to him with respect to the claim raised in this court; thus, his claim is considered exhausted for the purpose of federal habeas corpus review.[2]

<u>Statute of Limitations</u>

Respondents do not contend, and the court does not find, that the petition is time-barred pursuant to 28 U.S.C. § 2244(d).

**Standard of Review**

Petitions for writ of habeas corpus filed under 28 U.S.C. § 2254 are subject to the limited review set forth in Section 2254(d).  That section provides that

> [a]n application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any

---

[2]   Respondents do not waive the exhaustion requirement to the extent the petition may be construed as raising a federal claim. ECF 9 at p. 12. Additionally, petitioner was provided an opportunity to withdraw the instant petition in order to return to state court to institute post-conviction proceedings raising claims not raised on direct appeal. ECF 5. Petitioner was further advised that he would not be permitted to file a second federal habeas petition without first applying for leave to do so with the Fourth Circuit Court of Appeals. *Id.* Petitioner declined the opportunity to withdraw the instant petition and indicated his desire to go forward with a merits review on the single claim raised. ECF 6.

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

    1.       resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    2.       resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2) (as amended).   In reviewing petitioner's attack on his state court conviction, the court presumes that the state court's factual determinations are correct.   Petitioner bears the burden of rebutting this presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362 (2000), Justice O'Connor observed that:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id*. at 412-13.

The Court noted that "the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Id.* "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."

*Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).  With these standards in mind, this court addresses the claim now before it.

### Analysis

Respondents assert that the instant petition does not raise a federal issue and to the extent Wilkins contends it does, any federal claim has not been exhausted in the Maryland courts. ECF 9.  In response to respondents' assertion, Wilkins claims the issue before the Maryland appellate court necessarily involved an issue of constitutional magnitude, arguing the holding in *Henry*, relied upon by the Court of Special Appeals in the opinion denying relief, addressed fundamental rights a criminal defendant is guaranteed at sentencing.  ECF 10 at p. 3.  He asserts the court in *Henry* noted that "sentences within the maximum specified by statute do not constitute cruel and unusual punishment unless dictated by passion, prejudice, ill-will, or other unworthy motive."  *Id.*  He further contends that when Judge Young sentenced him, the comments he made were evidence of his improper motive and personal baggage,[3] relying on factors outside of Wilkins's control.  *Id.*

Wilkins's assertion that the Eighth Amendment is implicated in the state law relied upon to affirm his conviction does not suffice as a cognizable federal claim for purposes of federal habeas relief.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 503 U.S. 62, 67-68 (1991).  Although the opinion denying Wilkins's bid for appellate relief relied in part on *Henry*, the Court of Special Appeals's reliance on that case was to decline plain error review because the sentencing colloquy in Wilkins's case did not represent

---

[3]   In addition to the comments noted *supra*, Judge Young also spoke about personal tragedies he had recently experienced involving the death of a small child due to illness and an assault on a teenager that required his hospitalization in intensive care.  ECF 9 at Ex. 4, p. 16.

an abuse of discretion under Maryland law, nor did it represent an extraordinary circumstance warranting review despite the failure to preserve the matter procedurally.  There was no Eighth Amendment analysis by the state court, nor was an Eighth Amendment claim raised for the state court's review.  In the absence of a violation of a Federal constitutional right, a habeas petitioner fails to state a cognizable claim for relief.  *See Wilson v. Corcoran*, 131 S. Ct. 13, 14 (2011) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law."); *Spencer v. Murray*, 18 F.3d 237, 239-40 (4th Cir. 1994) (claim regarding admissibility of evidence that neither relied upon a constitutional provision, nor mentioned a constitutional right as infringed, did not state federal claim).  Having failed to state a cognizable federal claim, the instant petition must be dismissed.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.  *See* 28 U.S.C. § 2253(c)(2).

September 29, 2014                    _____/s/_____
Date                                  James K. Bredar
                                      United States District Judge